Good morning, Your Honor. Good morning. My name is Michael Reese. I am counsel for the Plaintiff Appellants in this matter. May it please the Court, I would like to reserve two minutes for rebuttal. All right. This case involves a significant fundamental right, the right to own property. Property ownership is one of the fundamental rights of our country and Constitution, and is what the laws at issue here are meant to protect. The laws at issue here are meant to protect that fundamental right. I want to just go over the facts of this case in a nutshell. Defendant Best Buy owns TV satellite receivers. It actually holds held title to those receivers, and it sold them to consumers in its retail stores that wait-and-switch scheme when the consumers paid money to the defendant for those receivers. Defendant, who again possessed the title, actually owned those receivers, did not transfer that title to the consumers as the consumers expected, but instead secretly transferred that title to a third party here in California, which is DirecTV. Defendant did this because it had a secret agreement with DirecTV, which was hatched and signed off on here in El to divert title away from the consumers. And why this is important, it allowed DirecTV to basically go to consumers and say, that's not your property, it's DirecTV's property, give it back to us. If you don't, you'll be subject to hundreds of dollars of fines. Plaintiff Weiss, for instance, actually under those threats returned that piece of property, lost that piece of property. So in terms of the declaratory relief that you're seeking, how could Best Buy satisfy the request for relief? If Best Buy no longer has title to the receivers, and DirecTV is the entity that required the receivers to be returned, what relief could your clients get against Best Buy? Sure. So there are contractual agreements between Best Buy and DirecTV that would come into play if we got the declaratory relief that, and there's different types of declaratory relief that they can seek. One is that the title to the receiver is ours. And then they could go into a court and say, this is actually our receiver. That Best Buy had no right to transfer that title to a third party. They told us we were going to own the receivers. At that point, they had a duty to give us title to that receiver. Declaratory judgment could also be that Best Buy had no right to transfer that title. And these are fungible goods. They actually sell right now on eBay for $50 to $60. If you want to go buy one of these or sell one of these, you could go on eBay right now and buy that. In fact, the receivers that are at issue here are still functional. You can still use them to receive TV, and you can buy and sell and trade them on the open market. So with declaratory judgment, we could use that against Best Buy to say, even if you can't necessarily give us the specific title for that, you can go and replace these receivers and give us those receivers. They may want to do that through cash, or they may just want to actually buy those receivers and give them the receivers. They may even have some of these back in their warehouses. Because as I said, they owned a lot of these receivers at one point. Now that we've gone through the basic facts, and I think this is no different than if this television set was sold to the Ninth Circuit, and then later somebody said, actually, I never sold that to the Ninth Circuit. It's my television. Give it back. If you don't, I'm going to fine the Ninth Circuit hundreds of dollars. It's about property rights. And why this is so important is the lower court made two mistakes. It applied the wrong legal standard. First of all, it dismissed on summary judgment saying, you cannot prove standing unless you showed that you overpaid for the product at the time you purchased that product. And it's a very hypothetical scenario that the court pointed to. But I think the issue was, what is the injury? Sure. And the injury is very simple. The injury is that people want their property back. And I think it's important to look at the cases. The reason I think the court made the ruling that it did is because there's language in the Kwikset decision about how you prove injury. And one of the possible ways to prove injury so that you have standing is to show that you overpaid for the product in the first place. But the problem is the court said that's the only reason to prove standing. And there are two cases directly on point, two cases that govern here. One is the Hinojos v. Cole Corporation case, which is a Ninth Circuit case. It's 718 F. 3rd 1098. And the other case is from the California Supreme Court. That's the Kwikset v. Superior Court decision, which is 51 Cal 4310. And in that Kwikset case, which was adopted by the Ninth Circuit in the Hinojos case, it's directly on point. And it said that while the price premium, which I've been discussing with Your Honor, is one way to prove injury, there are innumerable ways to prove injury. And this is what the court, the California Supreme Court said. This establishes standing. Here, this is a direct quotation from the Kwikset case. Quote, there are innumerable ways in which economic injury may be shown. One, plaintiff may surrender in a transaction more or acquire in a transaction less than he or she would have otherwise done. That's exactly the case here. The plaintiffs did not receive the title. They acquired less. Two, this again is the California Supreme Court, that the plaintiff had a property or future property interest diminished. That's exactly what we have here. These people don't have this property. They thought they were becoming the owners of this property, and then they don't. They're actually not the owners of this property. Is there another case in addition to the Kwikset case that you rely on? Hinojos. H-I-N-O-J-O-S-V-K-O-H-L. I got it. And that adopts the Kwikset reasoning to the Ninth Circuit. And then the third, this going back to the California Supreme Court, said one of the innumerable ways, and these are just examples, it's not exhaustive, is three, be deprived of money or property to which he or she has a cognizable claim. That's exactly what's at issue here. In fact, the California Supreme Court said lost property is itself a classic form of injury. And if a party has alleged or proven a personal individual loss of money or property, he or she has proven injury, in fact. And I think the lower court erred because it was only focusing on the economic, I'm sorry, the money aspect of it. But here this is a very simple case. These people lost their property. They want their property back. Counsel, could you address how the out-of-state plaintiffs have standing to sue in California? Sure. So again, and this again, now this is on a motion to dismiss, which was an older decision but didn't become final until final judgment was entered in 2014. Is this the February 11th, 2011 decision? Yes, Your Honor. Right. Thank you. Yes, Your Honor. But then final judgment was entered, I believe it's December 11th, 2014. Correct. And rule four, the appellate rules say that you don't have to appeal until there's a final judgment. In fact, the plaintiff, I'm sorry, the defendant sought cost against Mr. Mast regarding the plaintiffs, regarding costs associated with that. And this, I'll be the first to admit, this case has a long history. Part of that's because it's gone up to the Ninth Circuit twice on arbitration issues. But, Your Honor, to answer your question, there's a case, again, directly on point. It's the Ninth Circuit case of AT&T Mobility versus AU Optronics Corp. This is 707F3-1106. It's a 2013 case. It postdates the 2011 decision, Your Honor raised, but it does apply here. And in that decision, the Ninth Circuit held California consumer protection claims can apply to out-of-state residents against out-of-state facts. And it rejected the reason used by the lower court here when it dismissed those claims. Specifically, the Ninth Circuit in the AT&T Mobility case said, the district court place of purchase rule represents a return to the wooden and now largely abandoned Lex Loci Delecti doctrine. And instead, the Ninth Circuit said, you just don't look at where the transaction took place. Well, you have to look at the significant contact or significant aggregation of contacts, creating State interest. So that's the part that concerned me, whether or not there was adequate contact or aggregation of contacts with the out-of-State defendant, such that California should be the forum. And I can go through those with Your Honor. And the lower court ignored these and focused on the transaction place. But the conspiracies alleged to have occurred within California. How? How did the conspiracy occur within California? Did the parties gather in California at meetings? Yes. They did? Yes. The record talks about how there was an agreement between the parties in El Segundo, California, which was signed off by the parties. But did the agreement take place in El Segundo, or is that where it was signed? I don't think the record is clear that the out-of-State defendants actually traveled to California. My understanding, and maybe the record doesn't support this, but if the summary judgment is, I'm getting an echo here, I apologize for that. The summary judgment is reversed. We could amend the complaint to add more facts regarding that, including actual evidence. Well, let's look at the facts as they presently exist, because that's what the district court ruled upon. So the record ER-103, ER-297, ER-100, and ER-117 all talk about this agreement and some other facts I'm going to go into in a moment. This agreement being executed in El Segundo, California, which is basically to only lease these products. They also talk about the fact that the title was transferred to California, to the entity in charge, understanding, too, that this is where the receivers are that were sent back. These are actually in California. So California, if we win at trial, we'll have to use the California courts, possibly, to get that property back. But the concern is always whether it would be constitutionally okay to haul these people into California to defend. Well, sure. And there's no question that at least California law applies on behalf of Ms. Weiss. Exactly. Right. So Best Buy is not contesting that there's no – Best Buy asked you about the out-of-state plaintiffs. Sure. Best Buy, in fact, did not move to dismiss against Ms. Weiss, saying there's no question that the pleadings are sufficient and that there's sufficient contact with California and her. So Best Buy can't now contest, well, there's not enough contact with Best Buy to have California law apply. But how about to hear the claims of the out-of-state plaintiffs? Sure. And so those facts, again, would be that the agreement was entered into in California. They were required to return their receivers to California. The title that they never received was sent to DirecTV in California. We could even build the record more and more with all the emails between the two parties. There's an electronic system set up where basically California entity, DirecTV, was telling Best Buy what to do through this electronic system that it set up, how to interact with the customers, what to tell the customers, the whole scheme. This is no different – if you look at the facts of the AT&T mobility case, these are actually more facts than were in that case. And in that case, the Ninth Circuit said you could apply California law. The question is not whether you apply California law. It's whether or not these defendants – whether or not the out-of-state defendants should have to defend the case in California. Sure. And to be clear, Best Buy is not contesting that. Best Buy, in fact, does business here in California. The allegations are that they interacted on a regular basis with DirecTV in California. And they haven't contested that California residents have a right to sue them in California court under California law. Out-of-state residents. Is Best Buy challenging the ability of the out-of-state plaintiffs to sue them in California? That is correct. Right. So that's the point I'm trying to get you to focus on. Why should Best Buy be required to defend the complaints as it concerns the out-of-state plaintiffs? Sure. And it's because the aggregation of the factors that point to whether or not California law should be applied on – to the out-of-state residents. Alternatively, I'd point out, we also say that Minnesota – if California law is not applied in that manner, and we do think it should be under AT&T mobility, that Minnesota law should be applied. But that raises a different question, whether or not Minnesota law can be applied extraterritorially. And it's the same type of analysis. And you look at all the factors. One of the issues, I think, is this is really probably more appropriate dealt with at the class certification stage after a full record has been developed. We could – we've taken many depositions in this case. There's been lots of emails produced which show the links between the defendant and California as well as the Minnesota link. And if the case went back to the district court, we would hopefully get a chance to amend that if this court felt what's currently pled was not sufficient, to include actual evidence in the pleadings to show that there's no question that under AT&T mobility, the plaintiffs meet that standard here. All right. Thank you, Counsel. You've exceeded your time, but we'll give you one minute for rebuttal. Thank you, Your Honor. I apologize. May it please the Court, I'm Michael Gabelson and I represent Best Buy Stores LP. Good morning, Your Honors. There's a different lawyer that's before the court this morning than argued in the previous appeal of this case. But that's no excuse for ignoring what the plaintiff said procedurally and substantively in the decisions. He raises title, but there's no title document in the nature of a car title or a house title that gets given to a customer when they're at a Best Buy store. They go there, they pay the money, and they get a box. That's the end of it. But there's the assumption if you purchase something that it's your property. If you purchase a box at Best Buy, the assumption is it's your box. And there's no allegation in the complaint that Best Buy ever asserted any rights against this plaintiff to have to return it. There were no lease fees that were paid. There was no demand for the return of the receiver by Best Buy. And that's precisely what I'm talking about with what has already come to pass in this case and what the plaintiff has now judicially stopped from arguing. Was there a determination in the prior proceedings that title was given to DirecTV by Best Buy? Title to the boxes was given to DirecTV from Best Buy. Was that a part of the proceedings? There was not a determination that was made. I don't think that there was an issue that would have raised that issue for a determination, Your Honor. How did the issue arise then about the boxes being leased as opposed to being purchased? Why did that even become an issue? Well, that issue existed in DirecTV's customer agreement and its lease addendum. Now, plaintiffs deny that they ever received the customer agreement and the lease addendum. But it is because of the DirecTV customer agreement and lease addendum that we stand here today. That's not a document that Best Buy attempted to enforce. It's a document that the terms of which are the reason that plaintiff claims that or that DirecTV would have asserted was the customer agreement. What's troubling me is that it's very clear that these plaintiffs came to Best Buy to purchase the receiver. That's what they thought they were getting. That's what they were bargaining for. And it turns out that they did not get ownership of the receiver. They entered into some sort of a lease agreement. That's what's troubling me here. Help me understand why that's not a correct observation. So I'll note for your honor the two arguments that were made before that are on point. This is by the predecessor counsel in the prior appeal. It was argued that in this case they're simply making no claims at all under this contract, that's the customer agreement and lease addendum, with respect to Best Buy. We are making no references to the terms of the contract. Later they argued our best argument is that Best Buy is not a party to this contract and that we have not made any claim under the alleged contract against them, that we are not invoking any terms. We are not trying to have it both ways. That's precisely what they stand before you trying to do today. They attempt to say that the terms of the DirecTV customer agreement and its lease addendum are the thing that make this a lease instead of a sale. Best Buy has disclaimed any interest in the receiver. They have no interest in the receiver. And for them to now say in a claim that Best Buy is asserting some obligation for them to return, it's just not factual. And the only possible way that they could make that claim is based upon DirecTV's assertion of their rights under the customer agreement and its lease addendum. Without that, this is a sale as far as Best Buy is concerned. They walked out of the store with the box in their hands. If I could turn back for a moment to Mr. Masters and Mr. Murphy. I'd like to first... Before you leave that point, what about Kwikset? Doesn't Kwikset justify the claim that the consumers can show under these circumstances that they would not have purchased or whatever they did, they would have not entered into this arrangement with Best Buy absent a misrepresentation? That's what's sticking with me. I don't think you've been responsive to that. I haven't, Your Honor. I was attempting to respond to the other point, but the question Your Honor raises really concerns the fact supporting whether there is or is not an injury of any kind. And that's dependent not upon what the law is under and those facts demonstrate not only that she did not suffer an injury, but had she received a full disclosure with certitude about what all the terms were, that she would have done essentially the same thing. I'd refer Your Honor first to, and these sites are included in our brief, she says at ER-427 that I would not have leased it from Best Buy, I would have called DirecTV and gone back and just leased it whether it's Best Buy or DirecTV, there's not a distinction there as to the dollars or what the effect of the transaction would be. The second thing is that she says contrary to the cases that talk about a price premium, here she says that she would have paid many fold more for ownership of the receiver. So in the usual case, what you hear is I paid $99 and I would have only paid 85 if I knew it was leased. Here she says the opposite. But her argument is she would not have leased, she would not have engaged in the transaction at all. She said, she testifies she would not have paid $99 to lease. So the injury is she engaged in a transaction that she would not otherwise have engaged in. She would not have leased, period. So why isn't that injury? Economic injury, because she's out $99 for something she didn't want. Her own testimony demonstrates that she would have done it or that she doesn't know what she would have done. At best there is some contradiction regarding what she would have done. And that, in my view, precludes summary judgment on that point. Because at one point she said she would not have paid $99 to lease her receiver. She said if she had not obtained the lease receiver from Best Buy, she would have leased it from DirecTV. So that's an injury if she engaged in an economic transaction that she would not otherwise have engaged in. Why isn't that an injury? I respectfully disagree. If someone is going to engage in the same transaction and it happens to be with DirecTV instead of Best Buy, she's not out a penny. And the rights that she would obtain are exactly the same as with Best Buy. In fact, the testimony that I'm referring to is later in her deposition in response to her counsel's own questioning after whatever breaks were taken. And the other testimony that exists is that she says, I don't know if I would have paid $99 to DirecTV for the same receiver. That's at ER 779. Then she says that she would have relied on DirecTV to tell her what to do. That's at ER 714. Then we don't have to guess about what she would have done had she had a conversation because she did have a conversation. And we know because of her testimony at ER 766-67 what happened in that conversation. And when she called DirecTV and asked them about how to get service with one of their receivers, they told her to go to Best Buy because it was cheaper. So if there was a misrepresentation that was caused through that as her testimony says and they told her to go to Best Buy, then she did precisely the same thing that she would have done had there been a different disclosure. That's her testimony. Even if you're talking about what that fee would have been and even if she would have paid $99 to DirecTV instead of Best Buy, we're still at the same place we are before, which is that Best Buy never enforced any of the terms of ownership versus lease on her. It was only DirecTV and the only basis upon which to do that was the customer agreement and its lease addendum. There is no other interest that Best Buy held or contract that Best Buy asserted. If there are no other questions about the injury, I'll turn back to Mr. Masters and Mr. Murphy. Let me ask you a question about law of the case in this situation. As I understand it, this has to do with the February 11, 2011 order. Yes, sir. As I understand it, there was a notice of appeal filed, but then there was a waiver of the appeal. Do I have that correctly? You do. All right, well, take us through that. Sure. There was a February 2011 decision. That decision was, along with others, appealed. What happened, though, in that decision was that it was then dismissed in order to show cause basically from the court because there were still claims of Ms. Weiss pending at that point. After that order came back down, there was the motion brought to compel arbitration pursuant to the Concepcion case, which had been decided in the meantime. It was at that point that the court granted the motion to compel arbitration, both as to DirecTV and as to Best Buy. At that point, Mr. Murphy and Mr. Masters were no longer in the case as to Best Buy. It had been months and months by that point that they had been dismissed on the case. It was at that point that DirecTV, though, had brought their motion to compel arbitration. It was granted as to all plaintiffs. The only remaining plaintiff who needed to be dealt with and the only remaining claims that needed to be dealt with as to Best Buy were Ms. Weiss. By compelling arbitration, the district court determined the last of the claims as to the last of the parties that had any claims as to Best Buy. A notice of appeal was then filed that included the February 2011 orders expressly. And in that notice of appeal, those issues that were identified went up to this court. In that appeal, there was a brief that was filed, there was a response that was filed, and a reply that was filed. There was then an oral argument and a decision came down. And at no time in that discussion was there any criticism of the motion to dismiss. And in that decision on that appeal, it's the report... Is that the Murphy v. DirecTV? It is, Your Honor. It is. And in footnote one, after noting the procedural history I just related to, Your Honors, it says that plaintiffs referenced these minute orders in their notice of appeal but did not raise them in their opening brief. Therefore, we do not review those minute orders and concludes, however, as a result of those orders, Roberta Weiss, a California resident, is the only named plaintiff with remaining claims pending against Best Buy. And it was on that basis that the case went back to the district court such that the only named plaintiff with remaining claims pending against Best Buy was Ms. Weiss. And the case continued along in that manner in the district court. There was only a motion for summary judgment that was brought as to Ms. Weiss' claims. It was upon that motion that the court granted summary judgment as to Ms. Weiss, as to all of the claims. And then in the judgment that's appealed from here now, the court expressly rejected the judgment that was proposed by the plaintiff that included Mr. Masters and Mr. Murphy and adopted a judgment instead which read in part that whereas plaintiffs appealed that order, referring to the dismissal, but they appealed as to that order by failing to raise it in their opening brief, leaving only Roberta Weiss as a plaintiff in the case. And then judgment shall be entered and enters judgment only for Ms. Weiss. Now, does this have a direct impact with respect to the California and Minnesota state law claims? It does, Your Honor, insofar as those claims cannot be asserted by Mr.  They're out of court. So we don't, in your view then, we don't need to reach the question as to whether there were activities in California or the question of whether the Minnesota statute applies to purchases versus leases. That's absolutely right. And I should correct one more fact that's been stated here again today and several times in the record that is false, which is that we did not, on Mr. Masters and Mr. Murphy. It's in FER01 that was submitted with the reply brief. It is as to, it references the judgment as to, unfortunately it's Robert Weiss, not Roberta Weiss, but the intent is clear. It was Roberta Weiss and Roberta Weiss only. There is no reference to Mr. Masters or Mr. Murphy. They were no longer in the case. So, counsel, just help me understand your argument about Mr. Masters and Mr. Review because in the prior appeal, this court did not say that those appeals were waived. It just said that they were not being addressed. Well, but where an argument is included in a notice of appeal as appellate grounds, number one, and then it is not raised in an opening brief and the court cites to the Bell case there. I've lost some of my notes. My apologies. The difficulty I'm having with your argument is that until final judgment is entered, once final judgment is entered, all of the predecessor orders are subsumed in that judgment and can be appealed. I see my time is up. I just responded briefly. Please answer. Thank you. There was a final judgment because at the time of the Masters and Murphy order of dismissal on the motion to dismiss, they did not continue on in regard to the arbitration motions. But generally, you look at the entire case. As long as there is something pending against one of the parties to the case, the judgment isn't final for procedural purposes. Well, the case that the court cited in the footnote and the cases that are cited in our brief on that same point suggest that where an argument is waived on in the notice or included in the notice of appeal but not included in any way in the opening brief, that the arguments are waived. I would feel more comfortable if the disposition specifically said that the case was waived. It just said we're not addressing it. The appeal could have been premature because there was no final judgment in the entire case on those issues. Let me clarify a bit more, Your Honor. The order on the motion to dismiss as to Best Buy fully and finally resolved all of the claims as to Masters and Murphy. There was no issue remaining as to them. I understand what you're saying. Generally, if there are issues remaining as to any party, there has not been final judgment in that case. I'm not familiar with the authorities Your Honor has in mind in that regard. The ones that I've looked at and that we cited in the brief relate to the waiver of arguments that are included in the notice of appeal but not a subject of appeal and waived. To the extent that there is an implied affirmance of the dismissal as to those parties, then that would be the effect of the Court of Appeals prior ruling. As demonstrated by the judgment that the court finally entered, that only was a judgment as to Ms. Weiss. If we take Your Honor's premise to its logical conclusion, we still don't have a judgment as to Mr. Masters and Mr. Murphy. No one has proceeded on that basis at this point. Thank you, Counsel. Mr. Bottle, this case is procedurally very convoluted. It's complicated, Your Honor. I want to address a couple of matters to correct the record. First of all, to address Your Honor, even if Masters and Murphy were no longer in this case, you still have to consider whether or not California and Minnesota law can be applied to out-of-state residents. And the reason for that is those claims are asserted by Ms. Weiss. She's asking for Minnesota law to be applied nationwide. She's a California resident. She doesn't live in Minnesota. As well as she's asking that the California law be applied on a nationwide basis as well. So you still have to consider that issue. To go to the waiver issue. Does she have standing to invoke the Minnesota rule? She does, based upon the Ninth Circuit analysis and ATT mobility, which is if you look at all the factors that tie. Best Buy is located in Minnesota. I think it's Richfield, Minnesota. And courts have asserted, allowed for out-of-state residents to apply. Does that statute apply to leases? It does, Your Honor. But it also applies to sale. And that's what this whole case is about. Is it a sale or is it a lease? If it's a sale, there's no question about that. And we cited some cases in our briefs that show that it also applies to leases. And I just want to go to the waiver issue one real quick. Because if you look at the case, Your Honor, the Ninth Circuit has not, I apologize, has not decided this issue. And the whole idea of law of the case is that the actual merits have been determined. And they have not been determined here. Waiver is an issue about where if you don't raise something in your opening of brief and then try to do a blind side in your reply. And the courts say, no, you waived that. That's not fair to the other side because they didn't get a chance to address that in their opposition. Well, that's not what happened here. The issues were never at all touched or briefed in the first go. And they weren't done until final judgment's been entered. And Rule 4, the appellate rules, are very specific and say you can either appeal at the time of the order or final judgment. And that's where we are now. We're at final judgment. Nobody's contesting. It's untimely. And because it's a multiple party situation, Rule 54, the federal rules of civil procedure, come into play and say all the claims are not, one particular claim's not determined until all claims are determined. In fact, the Ninth Circuit dismissed the appeal earlier when it said, no, there are still claims pending out there. And you have to think, remember, arbitration is not that the claims were dismissed. They were just sent to a different forum. I just need to bring up one more point to correct the record. Well, two more points. I was co-counsel previously when this was argued before your honors or the Ninth Circuit. It was a different panel. But I was co-counsel. My co-counsel from public justice argued it. And Mr. Gabelson said there's no evidence that Best Buy did anything whatsoever to affect or impact or cause injury to the consumers. And that's just not true. ER-798, ER-799, and ER-800 are the interrogatories responded to by Best Buy. And in Interrogatory 17, they state, who owned the receivers at the time that they were sold to the consumers, right, prior to it? Best Buy's answer is Best Buy. Interrogatory number 20, do you contend that in any of the transactions between Best Buy and its customers with regard to the receivers, Best Buy transferred ownership in such receivers to any person or entity other than the individual consumers? The answer is yes. Interrogatory number 21, to whom did you transfer that ownership interest? The answer, Best Buy transferred it to DirecTV. But for that misconduct, we wouldn't be here. Thank you, counsel. Thank you, your honor.  The case just argued is submitted for decision by the court.
judges: O'scannlain, Fernandez, Rawlinson